## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

IN RE:                                                  CHAPTER 7

R. SCOTT APPLING and
CONNIE F. APPLING
                                                        CASE NO. 13-30083-JPS

     Debtors

LAMAR, ARCHER & COFRIN, LLP

     Plaintiff
  vs.                                               ADVERSARY PROCEEDING
                                                        NO. 13-03042
R. SCOTT APPLING.

     Defendant

---

## <u>RESPONSE TO MOTION TO DISMISS</u>

Defendant Appling moves to dismiss Plaintiff's Complaint on four grounds: (1) Defendant's alleged misrepresentation was not in writing as allegedly required by 11U.S.C. §523(a)(2)(A); (2) Plaintiff failed to allege actual intent not to pay in the future; (3) Plaintiff failed to plead facts sufficient to establish justifiable reliance; and (4) Plaintiff is only entitled to recover damages, if at all, on fees and expenses incurred after the alleged misrepresentation, not unpaid fees and expenses incurred prior to the misrepresentation.  As shown below, Defendant's Motion to Dismiss is without merit and should be denied.

**I. <u>Standard of Review</u>**

As the Eleventh Circuit Court of Appeals has held, " 'motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim.' " *Auburn Med. Ctr. v. Andrus*, 9 F.Supp.2d 1291, 1294 (M.D.Ala. 1998) (quoting *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). "In considering a motion to dismiss, a court places a 'very high burden' on a defendant to show that a plaintiff cannot conceivably prove any set of facts which would entitle him to relief." *Tabas v. Greenleaf Ventures, Inc. (In re Flagship Healthcare, Inc.)*, 269 B.R. 721, 725-726 (Bankr.S.D.Fla. 2001) (citations omitted).

On a motion to dismiss a complaint, the factual allegations set forth in a complaint are presumed to be true and all factual inferences must be drawn in favor of the plaintiff and against the defendant. *Id.,* at 725 (citation omitted). "Assuming that the facts are true, a complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only 'if it is clear that no relief could be granted' under any set of facts that could be proved consistent with the allegations." *Auburn Med. Ctr.*, at 1294 (citation omitted).

The amended complaint sets forth facts that satisfy the Iqbal/Twombly "enhanced pleading" requirements by alleging facts that meet the requirements of Bankr. R. Civ. P. 7008(a) and Fed. R. Civ. P. 8 made applicable by Bankr. R. Civ.

P. 7008 and Fed. R. Civ. P. 9 made applicable by Bankr. R. Civ. P. 7009, thereby

**showing** that plaintiff is entitled to relief.  As the Court stated in *Twombly,*

"Asking for plausible grounds to infer an agreement does not impose a probability

requirement at the pleading stage; it simply calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence of illegal agreement."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 127 S. Ct. 1955, 1965 (2007).

Further,  the Court stated:  "…we do not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its

face." (*Id.* at 570, 1974.)

In *Iqbal,* the Court stated, citing to *Twombly*:  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct

alleged…The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Further, "Determining whether a

complaint states a plausible claim for relief will, as the Court of Appeals observed,

be a context-specific task that requires the review court to draw on its judicial

experience and common sense…When there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." (*Id.* at 1950).

Plaintiff asserts that the Amended Complaint contains "well pleaded factual allegations, [this] court should assume their veracity…" and that they plausibly give rise to an entitlement to relief.

Plaintiff respectfully submits that the Defendant has failed to carry his burden to dismiss Plaintiff's Complaint herein.

## II.   <u>Statement of Facts</u>

Contemporaneously herewith, Plaintiff has filed its Amended Complaint (hereinafter referred to as "Compl.") which sets forth the factual and legal basis for the non-dischargeability of Defendant's debt to Plaintiff.  For purposes of Defendant's Motion To Dismiss, the following well pled facts are undisputed.[1]

Succinctly stated, Plaintiff  has a judgment for $104,179.60 plus interest for fees and expenses incurred in successfully representing  Debtor/Defendant Scott Appling ("Appling") and his company, Hartwell Enterprises, Inc. ("Hartwell Enterprises") in a lawsuit.  *See,* Compl., ¶¶ 2, 7.  As a result of Plaintiff's efforts, Defendant and Hartwell Enterprises avoided payments of over $21,000 a month, his and Hartwell Enterprises' debt was decreased by over $1,500,000, and he avoided the acceleration of over $2,000,000 in debt secured by his and his mother's personal assets.  *See*, Compl.,¶. 7.

---

[1] *Tabas v. Greenleaf Ventures, Inc., supra*, at 725.

Specifically, Defendant and Hartwell Enterprises had purchased a business in June 2004 and the first monthly payments to the seller and broker in the purchase transaction were due in late July, 2004. *See,* Compl., ¶¶ 4, 5. Upon taking over the business, Defendant determined that he had been defrauded in the purchase of the business and retained Plaintiff law firm to represent him and Hartwell Enterprises. *See*, Compl., ¶ 4.

Plaintiff immediately filed a lawsuit on behalf of Defendant and Hartwell Enterprises in July, 2004 before any monthly payments were due to the seller and broker. *Hartwell Enter. Inc., et al. v. Herrington Seating, Inc*., *et al*., No. 04-FV-528-J/H (Franklin Super., Ga.) (the "*Hartwell Enter*. lawsuit"). *See,* Compl., ¶ 5. Plaintiff sought and obtained a temporary restraining order and subsequent preliminary injunction, which injunction allowed Defendant and Hartwell Enterprises to operate the business without having to make any payments to the *Hartwell Enter*. lawsuit defendants during the pendency of the lawsuit. This saved Defendant having to pay more than $21,000 a month and prevented the acceleration of over $2,000,000 in debt. *See,* Compl., ¶ 7.

Ultimately, the case was settled against all defendants (the last being in March, 2006), with a savings to Defendant and Hartwell Enterprises of more than $1,500,000. *See,* Compl., ¶ 10.

Pursuant to its fee agreement with Defendant and Hartwell Enterprises, Plaintiff generally billed them on a monthly basis for attorney's fees and expenses. *See,* Compl., ¶ 6. As of March 2005, Defendant and Hartwell Enterprises were delinquent in payment of Plaintiff's invoices in the amount of $66,710.57 (the "past due amount"). *See,* Compl., ¶8. By letter from Robert Lamar of Plaintiff law firm dated March 9, 2005, Plaintiff advised Defendant that it would have to withdraw from its representation of him and Hartwell Enterprises if Plaintiff's past due fees and expenses were not brought current. *See,* Compl., ¶ 9. At a meeting several days later, Defendant told Mr. Lamar that his CPA had already prepared his 2004 tax return and that he shortly would receive a tax refund in excess of $100,000 (the "tax refund) that would be sufficient to pay all of Plaintiff's outstanding fees and expenses. *Id.*

Defendant specifically promised that if Plaintiff would forgo immediate collection of the past due amounts and continue to represent him and Hartwell Enterprises, that he would pay all past due amounts and future legal expenses of Plaintiff from the tax return as soon as he received it. *Id.* Based upon this representation, Plaintiff did not attempt to collect the past due amount, did not withdraw from representing Defendant and Hartwell Enterprises, continued representing them and incurred additional fees and expenses in the amount of

6

$25,885.50 ($50,334.69 including interest at the contractually agreed rate). *See*,

Compl., ¶ 10.

In November, 2005, Defendant renewed his promise that he would pay

Plaintiff from the 2004 tax refund and Plaintiff therefore continued working and

completed  settlement of  the *Hartwell Enter*. lawsuit in March, 2006. *See*,

Compl., ¶14.

Each time Defendant promised to pay Plaintiff from the tax refund,

Defendant had no intent to use the refund to pay Plaintiff; or, in the alternative, he

recklessly made the promise and had no reasonable basis to believe with certainty

that the tax refund when received would be available to pay Plaintiff. *See,* Compl.,

¶¶ 11, 13. Even though Plaintiff had been able through its efforts to significantly

reduce Defendant's debt and monthly payments, Defendant knew the business was

sliding downhill, had dire cash flow problems and was in need of capital.  *Id.*

Also, Defendant knew that use of the tax refund would be, or at least could be,

necessary for critical capital.  *Id*. However, he failed to fully inform Plaintiff about

the distressed state of the business or the possible need for use of the tax refund

for capital to the business, thereby encouraging Plaintiff to agree to the financial

accommodation to his benefit and to the detriment of Plaintiff. *See,* Compl., ¶12.

Further, if Defendant had in fact spent the tax refund elsewhere by the time of the

November meeting with Plaintiff (as he has alleged), his renewed promise that he

would pay Plaintiff from the tax refund was clearly false when made at the November 2, 2005 meeting.

Plaintiff learned, after the *Hartwell Enter*. lawsuit had been settled and dismissed,  that Defendant had received the tax refund in an amount sufficient to pay Plaintiff's outstanding fees and expenses but spent it elsewhere. *See,* Compl., ¶15. Defendant never paid any money to Plaintiff out of the tax return. *Id.*  In fact, he never advised Plaintiff that he had spent the tax refund elsewhere until responding to Plaintiff's inquiry as to status of the tax refund. *Id.*

Defendant has given at least four (4) different explanations (orally, in writing and under oath) as to why he did not pay the money from the tax refund to Plaintiff. *See,* Compl., ¶16. Defendant has demonstrated a pattern of similar fraudulent or reckless conduct. In a transaction with another creditor, he promised to pay for a delivery of foam but after the foam was delivered, he sold the foam and never paid the supplier. *See,* Compl., ¶17. And, although he repeatedly told Plaintiff that he had no monies to pay for its legal fees other than the tax refund, he actually had an IRA of approximately $200,000.  *Id.*

Simply stated, Plaintiff did not attempt to collect the past due amount and continued to represent Defendant and Hartwell Enterprises in the *Hartwell Enter*. lawsuit because of Defendant's false promises that he would pay Plaintiff' legal fees and expenses out of his 2004 tax refund. Defendant either had no intent to

honor the promises when he made them or was reckless in making said promises

under the circumstances alleged in Plaintiff's Amended Complaint.

## III.    <u>Argument and Citation of Authorities</u>

### 1. **The Alleged Misrepresentation in this Case was not Required to be in Writing.**

The first basis for Defendant's Motion to Dismiss is that Defendant's

representation that he would receive a tax refund that he pledged to use to pay

Plaintiff's fees and expenses was not in writing, and that by virtue of the 11

U.S.C. §523(a)(2)(B) requirement that a statement respecting the "debtor's

financial condition" must be in writing, Plaintiff's claims fail.  Motion to Dismiss

at 5.  Defendant's argument misses the point.  The complaint is not based on 11

U.S.C. Section 523(a)(2)(B); rather, it seeks recovery under Section 523(a)(2)(A).

In both of the cases cited by Defendant, the debtor had made a <u>false</u>

representation <u>regarding the existence of a financial asset</u> which the creditor

alleged constituted fraud.[2]  That is not the situation in this case.  Here, both

parties agree that the Defendant accurately represented that he had an asset (i.e., a

---

[2] *In re Sharpe,* 351 B.R. 409, 425-426  (Bankr.N.D.Tex. 2006) (multiple false representations made by the debtor, including debtor's representation that "he had funds available to repay her hidden away pending his divorce." ).
*In re Callaway,* 2006 WL 6589022  *34 (Bankr.N.D.Ga. 2006) (false representation that debtor would receive $400,000 to $500,000 per year in trust distributions).

tax refund) which was sufficient to pay all his obligations to Plaintiff.  Plaintiff

has not alleged a false representation concerning the existence of the tax refund.

Here, both parties agree that the Defendant accurately represented that he

had <u>one</u> asset (i.e., a tax refund) which was sufficient to pay all his obligations to

Plaintiff.  *Compare* Plaintiff's Initial Complaint [Doc 3] ¶ 8 *with* Defendant's

Answer [Doc 8] ¶ 8.  Thus, there was no requirement under 11 U.S.C.

§523(a)(2)(B) that Defendant's representation of  existence of the asset be in

writing.  This case does not involve a false statement concerning the debtor's

overall financial condition within the ambit of 11U.S.C. §523(a)(2)(B).  Rather, it

centers upon the debtor's pledge of an asset <u>which everyone agrees actually</u>

<u>existed</u>.

Moreover, to the extent the issue could be relevant herein (which it is not), a

statement representing the existence of a single asset, has almost uniformly been

held not to constitute "a statement respecting the debtor's or insider's financial

condition" under 11 U.S.C. §523(a)(2)(A) and (B).  *See, e.g., Bandi v Becnel (In*

*re Bandi)* 683 F.3d 671, 676 (5th Cir. 2012); *In re Tucci*, 462 B.R. 278, 283 (Bankr.

D. Mass. 2011) ("the narrow definition of 'financial condition' is the proper

interpretation of 11 U.S.C. § 523(a)(2)(B)….  Applying the narrow definition to

the present case, the Statement of Ownership does not qualify as a statement of

financial condition because it was a statement of ownership of a single asset, and not an assessment of the Debtor's overall financial health.").[3]

Defendant's citation to *In re Callaway, supra,* as controlling that a writing was required under the facts in this case is misplaced on several fronts. First, the cited decision was an order following a bench trial– not an order on a motion to dismiss. Presumably, the Plaintiff's pleadings had already stated a claim. Second, the discussion regarding the requirement for a writing concerning the existence of certain trust income was clearly *dicta.* The court had previously found that the debtor never made such a representation. *Id.*, at *20. Finally, Plaintiff respectfully submits that the court's discussion regarding whether the representation regarding the trust income would have had to have been in writing <u>if it had been made</u>, is unpersuasive for several reasons. The decision in *Calloway* was rendered before the Fifth Circuit's decision in *Bandi*, and it is contrary to the overwhelming weight of authority.

Defendant omits the *Callaway* court's approval of the strict approach as to what constitutes statements of "financial condition" which fall within the purview of 11 U.S.C. § 523(a)(2)(B): ". . . <u>the Court</u> concurs with the reasoning of the

---

[3] *Accord, In re Chivers*,  275 B.R. 606, 615 (Bankr.D.Utah 2002), *aff'd, Chivers v. Skull Valley Band of Goshute Indians*, 2004 U.S. Dist. LEXIS 12270 (D.Utah 2004); *In re Alicea*, 230 B.R. 492, 503 (Bankr.S.D.N.Y. 1999); *In re Olinger*, 160 B.R. 1004, 1009 (Bankr.D.Ind. 1993); *In re Sansoucy* , 136 B.R. 20, 23 (Bankr.D.N.H 1992).

Tenth Circuit Court of Appeals in [*In re Joelson,* 307 B.R. 689, 696 (10th Cir.

BAP 2004), *cert. den.* 2006.] and also <u>agrees that a strict approach is preferable to

an overly broad approach</u>, . . . ." *Id.*, 2006 WL 6589022, *21 (emphasis supplied).

The *Callaway* court also recognized "a trend in the case law" quoting the *Joelson*

court's characterization of the types of statements with which § 523(a)(2)(B) is

concerned:

> [S]tatements excluded from the reach of section 523(a)(2)(A) [are
> required] to be "financial-type statements including balance sheets,
> income statements, statements of changes in financial position, or
> income and debt statements that provide what may be described as the
> debtor or insider's net worth, overall financial health, or equation of
> assets and liabilities."

*Id.*

In *Bandi v. Becnel, supra* ,the Fifth Circuit confirmed the "trend in the case

law" and clearly adopted the "strict approach" and defined what constituted it:

> The term 'financial condition' has a readily understood meaning. It
> means the <u>general overall financial condition of an entity or
> individual, that is, the overall value of property and income as
> compared to debt and liabilities</u>.  A representation that one owns a
> particular residence or a particular commercial property says nothing
> about the overall financial condition of the person making the
> representation or the ability to repay debt.

*Id*., (emphasis supplied).[4] For the foregoing reasons, Appling's statement that he was going to get a tax refund and would use it to pay Plaintiff did not have to be in writing.

Interestingly, another holding in the *Callaway* decision supports  the validity of Plaintiff's claim herein.  Contrary to the allegedly <u>false</u> representation concerning the purported trust income in *Callaway*, the court, also addressed a representation similar to the one before the Court here.  In *Calloway*, everyone agreed that the debtor was going to receive and did in fact receive a $350,000 loan from the plaintiff.  The debtor promised to utilize the loan proceeds to pay 50% of a $700,000 obligation to a third party.  Although the court found that the representation was true when made, before the loan closed, the third party had already reduced the $700,000 debt by 50% but, the debtor did not inform the plaintiff of the debt reduction and the debtor did not in fact use the $350,000 loan to pay down the debt to the third party.  The *Callaway* court found that, "considering the totality of the circumstances,"  the debtor had no intention of

---

[4] Defendant's reliance upon *In re Sharpe*, *supra,* is also unavailing. There, the debtor made numerous allegedly false representations regarding his overall financial condition which the creditor relied upon -- including that he had hidden some cash. The only statement made by Defendant at issue here regarded the existence of one specific asset – not his overall financial condition. Moreover, to the extent that the court held in *Sharpe* that the pledge of an individual asset must be in writing, the holding was overruled by the Fifth Circuit's subsequent decision in *Bandi, supra*.

using the loan proceeds to pay down the third party debt and found the debt

nondischargeable. *Callaway, supra*, at 23-24.

As shown below, the "totality of the circumstances" as pled in this case

support the potential non-dischargeability of Defendant's <u>entire</u> debt to Plaintiff

herein.

## 2. Plaintiff's Amended Complaint States a Claim for False Pretenses, False Representations and/or Actual Fraud.

Although the discharge of preexisting debt is a primary tenet of bankruptcy

law, "a separate equitable policy mandates that any such mechanism for an

unencumbered fresh start only should redound to the benefit of those debtors who

are unfortunate, yet honest." *Grogan v. Gardner,* 498 U.S. 279, 286-87 (1991).

Thus, the Bankruptcy Code provides for the nondischarge of debt obtained by false

pretenses, false representations and/or actual fraud.  11U.S.C. §523(a)(2)(A).

"A bankruptcy court may look to the totality of the circumstances, including

the recklessness of a debtor's behavior, to infer whether a debtor submitted a

statement with intent to deceive."  *Equitable Bank v. Miller (In re Miller)*, 39 F.3d

301, 305 (11th Cir. 1994).  Defendant's brief analysis of conduct which may rise to

the level of false pretenses, false representations and/or actual fraud overlooks that

a statement made "with reckless disregard for the truth" constitutes a willful

misrepresentation under 11U.S.C. §523(a)(2)(A).  *See, e.g., In re Volpentesta*, 187

B.R. 261, 271 (Bankr. N.D.Ill. 1995).  Moreover, "[w]here the debtor has

14

possession of material information that may bear on the creditor's willingness to extend a financial accommodation to him; knows that the creditor would consider it; fails to disclose it; creates or allows the creation of the semblance of a very different state of affairs; and reinforces that imposture by withholding of the material information, the debtor has acted in a way to trigger § 523(a)(2)(A)." *In re Foxworth*, 17 FLW Fed. B 239, 2004 Bankr. LEXIS 1205, *8 (Bankr.N.D.Fla. 2004) (quoting *In re Anderson,* 181 B.R. 943, 948 (Bankr.D.Minn. 1995)).

The First Circuit U. S. Court of Appeals, in *Palmacci v. Umpierrez*, 121 F.3d 781 (1st Cir. 1997) (cited by Defendant in its Motion) accurately describes the factors the Court should consider in a case like this, when determining whether a misrepresentation is sufficient to make a debt nondischargeable.  In *Palmacci*, the claimant agreed to invest $75,000 in a venture based upon the debtor's representation that the debtor would himself invest $75,000 in the venture and the funds would be placed in a trust.  It was alleged the debtor did not invest his $75,000 as promised and that his representation that he would do so was fraudulent because of the debtor's "reckless indifference to the truth" as to whether he would actually be in a position to fulfill his promise in the future.  *Id*., at 788.

The Court of Appeals held that the issue was whether the debtor "in good faith intended to keep his promise" when he made it.  Importantly, the Court held that in determining whether the debtor had a "good faith belief" at the time he

made the representation that he would perform it, the fact finder could look to "the very unreasonableness of the belief [as] strong *evidence* that it does not in fact exist." *Id*., at 788 (emphasis in original). "[I]ntent to deceive may be inferred from the totality of the circumstances, including inferences from circumstantial facts." *Id.*, at 790.

"Among the circumstances from which scienter may be inferred are: the defendant's insolvency or some other reason to know that he cannot pay, his repudiation of the promise soon after made, or his failure even to attempt any performance." *Palmacci*, *supra*, at 789. The court should focus upon "whether the surrounding circumstances or the debtor's actions 'appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor.' " *Id.*(citation omitted).

Here, there are ample circumstances pled sufficient for the Court to infer at this early stage of the proceeding that Defendant intended to defraud Plaintiff or pledged his tax refund proceeds to Plaintiff with reckless disregard for the truth or falsity of his statement, including:

- His knowledge of the dire financial condition of his business;

- His failure to disclose material facts to Plaintiff regarding the dire condition and prospects for his business;

- Relatively short time period elapsed between making the promise and breaching it;

- Failure to even attempt any performance;

- History of similar misrepresentations; and

- Failure to advise Plaintiff of his breach of promise while he knew Plaintiff was continuing to perform in reliance on his promise.

### 3. Plaintiff Has Pled Sufficient Justifiable Reliance.

"[J]ustifiable reliance is the standard applicable to a victim's conduct in cases of alleged misrepresentation and that 'it is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.'" *Field v. Mans*, 516 U.S. 59, 71-72 (1995) (quoting W. Prosser, Law of Torts § 108, p. 718 (4th ed. 1971)).

Defendant alleges that because Plaintiff is a "sophisticated law firm" it could not have justifiably relied upon Defendant's misrepresentation.  Motion to Dismiss, at 6.  Particularly, Defendant contends that Plaintiff did not know that the taxing authority would approve the refund, the amount of the refund or the timing of the refund.  Again, Defendant totally misses the point.  Plaintiff is <u>not</u> alleging any misrepresentations were made about the approval of the refund, the amount of

the refund or the timing of the refund.  In fact, it appears undisputed that: (1) the

refund was approved and sent to Defendant; (2) in an amount  sufficient to satisfy

Plaintiff's invoices; and (3) was received (according to Defendant) before Plaintiff

completed its work for Defendant.

Nor is there any dispute that Defendant promised to pay Plaintiff from the

refund proceeds. *Compare* Initial Complaint  [Doc 3] ¶ 8 *with* Answer [Doc 8] ¶ 8.

Thus, it is immaterial whether Plaintiff wrote a letter confirming the Defendant's

promise. *See*, Motion to Dismiss, at 6.

Here, the only thing Plaintiff justifiably relied upon was the word of its

client that he would use whatever was necessary of his tax refund to pay Plaintiff's

bills.  Defendant does not explain why Plaintiff was not entitled to trust his narrow

promise.

### 4.  Defendant's Entire Indebtedness to Plaintiff Is Nondischargeable.

Without citing any authority, Defendant claims that even if Defendant did

intend to defraud Plaintiff and Plaintiff justifiably relied upon Defendant's

misrepresentation, Plaintiff can only recover the fees and expenses incurred by

Plaintiff after the false representation was made (i.e., $50,334.69, including interest

at the contractual rate[5]) rather than the entire amount owed, including the past due

amount Plaintiff did not attempt to collect at the time in reliance on Defendant's

_____

[5] *See*, Amended Complaint, ¶ 10.

misrepresentation. Motion to Dismiss, at 6-7. Plaintiff has a judgment against

Defendant for fees, expenses and interest (through September 24, 2012) in the

amount of $104,179.60. Compl. ¶2. Plaintiff is entitled to have the entire debt

deemed nondischargeable.

"Section 523(a)(2)(A) disallows the discharge of an individual debtor from

any debt 'for . . . <u>an extension, renewal, or refinancing of credit</u>, to the extent

obtained by . . . false pretenses, a false representation, or actual fraud.'" *Field v.*

*Mans*, 157 F.3d 35, 42 (1st Cir. 1998) (emphasis supplied). *Accord*, *Cho*

*HungBank v Kim (In re Kim)* 62 F3d 1511 (9th Cir. 1995) ("Fraudulently inducing

a creditor's extension of due date on a credit is sufficient to support claim of non-

dischargeability under 11 USCS § 523(a)(2)"); *Int'l Fidelity Ins. Co. v. Baxter (In*

*re Baxter)*, 294 B.R. 800, 807 (Bankr. M.D. Ga. 2003).  It is not necessary for

creditor to show that "new money" was lent to debtor.  *Id.*  "[A]n extension may be

an 'increase in length of time' or 'an agreement on or concession of additional

time'" to pay a debt.  *Field v. Mans*, *supra*, at 43.  Several Circuit Courts have held

that "a refinancing or extension of credit" is sufficient  [*967]  without showing

further damage. A creditor need not also show that he could have collected on the

loan prior to the bankruptcy but for the new extension of credit.  *Wolf v. Campbell*

*(In re Campbell)*, 159 F.3d  963, 966-967 (6th Cir. 1998). *Accord, Matter of*

*McFarland*, 84 F.3d 943, 947 (7th Cir.), *cert. denied*, 519 U.S. 931, 136 L. Ed. 2d

19

220, 117 S. Ct. 302 (1996); *Matter of Norris*, 70 F.3d 27, 29 n.6 (5th Cir. 1995); *In re Goodrich*, 999 F.2d 22, 25 (1st Cir. 1993).  As stated by the Sixth Circuit Court of Appeals: "To hold otherwise would create a perverse incentive for insolvent debtors to lie to creditors to get them to forbear collection of past due indebtedness and would remove the primary legal incentive for fair dealing -- namely, non-dischargeability in bankruptcy when a contract is induced by fraud."  *Wolf v. Campbell*, *supra*, at 967.[6]

Plaintiff has alleged it forestalled any effort to collect the past due amount as a result of Defendant's promise to pay the past due amount from the tax refund when he received it.  Plaintiff has thus stated a claim for non-dischargeability of the entire judgment amount.

## 5. Alternatively, the Court Should Stay Consideration of the Motion to Dismiss to Allow Plaintiff to Conduct Discovery.

Plaintiff respectfully submits that, at the least, the Court should stay the Defendant's Motion and permit Plaintiff to conduct discovery.  The propriety of permitting discovery justifies denial of Defendant's Motion:

[I]n order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[6] Even when a court has held the existence of some damage to the creditor is relevant, the burden is <u>not</u> on the creditor to prove that had it attempted collection, recovery would have been a virtual certainty.  Rather, for the debtor "to preserve his own right to the 'fresh start' provided by bankruptcy, it was his burden . . . to have established affirmatively that acceleration would not have been a feasible choice." *Field v. Mans*, *supra,* at 46.

claim to relief that is plausible on its face.' " *Ashford v. Iqbal,*[556 U.S. 662, 679], 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007)). <u>In the event the complaint proffers "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim, there is a "plausible" ground for recovery and thus a Rule 12(b)(6) motion to dismiss should be denied.</u>  *Twombly,* 550 U.S. at 556.

*In re Dixie Pellets, LLC*, 2010 WL 2367326, *3 (Bankr.N.D.Ala. 2010) (emphasis supplied).

## IV.   <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

/s/Bruce B. Weddell_____
Bruce B. Weddell
Georgia State Bar No. 745300
Attorney for Plaintiff

Burbage & Weddell, L.L.C.
100 Colony Square, Suite 1825
Atlanta, Georgia 30361
(404) 817-8071
Email: bweddell@bwatl.com

/s/ Robert C. Lamar_____

Robert C. Lamar
Georgia State Bar No.431175
Attorney for Plaintiff

Lamar Archer & Cofrin
50 Hurt Plaza, Suite 900
Atlanta, Georgia
(404) 577-1777
Email: rclamar@laclaw.net

## CERTIFICATE OF SERVICE

The within and foregoing RESPONSE TO MOTION TO DISMISS was

served electronically as follows:

Daniel Lewis Wilder
Law Offices of Emmett L. Goodman, Jr. LLC
544 Mulberry Street
Suite 800
Macon, GA 31201

This 11th day of June, 2013.

/s/Bruce B. Weddell_____
Bruce B. Weddell