# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| IN RE: | |
| R. SCOTT APPLING AND CONNIE F. APPLING, | CHAPER 7 NO.<br><br>13-30083-JPS |
| Debtors. | |
| LAMAR, ARCHER & COFRIN, LLP,<br><br>Plaintiff,<br><br>v.<br><br>R. SCOTT APPLING,<br><br>Defendant. | ADVERSARY NO.<br><br>13-3042<br><br>JUDGE SMITH |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

COMES NOW, Defendant, and files this his Reply to Plaintiff's Response to Motion to Dismiss. Defendant asks that the Court construe the Complaint as filed and not the factual allegations or suppositions made in the Statement of Facts attached to Plaintiff's Response to Motion to Dismiss. Defendant addresses Plaintiff's responses in turn.

The first legal issue is whether the alleged representation by Defendant was an oral statement respecting the debtor's financial condition that is not actionable under the text of 11 U.S.C. § 523(a)(2)(A). Plaintiff contends that Defendant's reliance on In re Calloway, 2006 WL 65890222, (Bank. N.D.Ga. 2006) and In re Sharpe, 351 B.R. 409, (Bank.N.D.Tex. 2006) is misplaced and represents a narrow view that this Court should not apply. Of course, Defendant disagrees for the reasons cited in its Motion to Dismiss. Plaintiff would prefer that the Court follow In re Bandi, 683 F.3d 671 (5th Cir. 2012) for its holding, based on its review of legislative

history, that a representation about having a particular asset is not necessarily a statement about a financial condition unless it also includes a broader statement about assets and liabilities. Plaintiff would then require a somewhat lengthy oral statement akin to a balance sheet analysis to be deemed non-actionable. However, at least one Court has publicly disagreed with perhaps Bandi's main premise and analysis. See, In re Wube, 2013 WL 1137108, Adversary No. 12-10046 (Bky. D.D.C. 03/19/13).

In Wube, the misrepresentations involved the debtor's ownership of certain nightclubs and his control of revenues from those clubs. 2013 WL 1137108 at 2. The creditor was relying on those representations for repayment of a loan. Id. The Wube court found,

> The critical inquiry is the purpose of the statement. This is not a case of the debtor misrepresenting the character of the asset being purchased (e.g., a misrepresentation that the asset is unencumbered). . . . Here, in contrast, the statement *was* made as an indication of financial ability to pay.

2013 WL 1137108 at *3, (Emphasis in original). Even so, the Wube court found that even under the Bandi interpretation, "the alleged misrepresentations concern Wube's financial worth and ability to pay," and were not covered under 11 U.S.C. § 523(a)(2)(A).

Looking to Wube for guidance in this case, Plaintiff admits in its Response that there was an accurate representation of the one asset, the tax refund. (Response at 10). Plaintiff is not arguing that Defendant misrepresented the existence or character of that asset but only that Defendant orally misrepresented that he would pay over that asset to Plaintiff once received. This is a statement about ability to pay further confirmed by the allegations of the Amended Complaint. Plaintiff considered Defendant's business problems, obtained relief from the Superior Court that allowed Plaintiff to continue business without making payments, and was threatening collection or withdrawal from representation due to non-payment by Defendant. (Amended Complaint at Paragraphs 5, 7, 8). In short, this was a collection action. The alleged

misrepresentation in this case was about how Plaintiff could repay the debt already owed. Just as in <u>Wube</u>, the critical inquiry is purpose - the misrepresentation in this case necessarily goes to financial condition. The alleged misrepresentation is simply not actionable under 11 U.S.C. § 523(a)(2)(A).

Second, Plaintiff virtually admits that the original Complaint fails to state a claim under 11 U.S.C. § 523(a)(2)(A) by abandoning that Complaint wholesale and choosing to defend only the Amended Complaint. However, the Amended Complaint fails for much the same reasoning as did the original Complaint. First, Plaintiff wholly fails to address the heightened standard required for representations about future events. Instead, it meanders through contentions that the Court should examine the totality of the circumstances basis of a statement allegedly now "in reckless disregard for the truth" citing <u>Palmacci v. Umpierrez</u>, 121 F.3d 781 (1st Cir. 1997) (Response at 14). The reckless disregard aspect though appears to be losing steam. Just last month in <u>Bullock v. Bankchampaign</u>, 133 S.Ct. 1754, 81 USLW 4292 (05/13/2013), the U.S. Supreme Court held that a higher scienter requirement than mere "objective recklessness" was required to prove defalcation under 11 U.S.C. § 523(a)(4). There must be proof of an intentional wrong. 133 S.Ct. at 175. In any event, the alleged misrepresentation in <u>Palmacci</u> dealt with the non-occurrence of the immediate investment of $75,000.00 in debtor's own funds into a real estate transaction with the creditor. The bankruptcy court actually ruled for the debtor, and the 1st Circuit affirmed that ruling discharging the debt. Yet this logic necessarily implicates a past event, and the alleged representation here is about the future.

From <u>Palmacci</u>, Plaintiff implores the Court to take account of circumstantial statements, including the debtor's knowledge of the financial condition of his business and the relative time periods. (Response at 17). This blends into Plaintiff's argument concerning reliance. Plaintiff

explains that "the only thing Plaintiff justifiably relied upon was the word of its client that he would use whatever was necessary of his tax refund to pay the Plaintiff's bills." (Response at 18). However, this reliance was despite the acknowledgements by Plaintiff in the Amended Complaint that Defendant was suffering financial difficulty as indicated above, and the specific allegation that Defendant was allegedly already in arrears to Plaintiff to the tune of some $66,000. (Amended Complaint at 8). Plaintiff had anything if equal knowledge of the precariousness of Defendant's financial condition by virtue of the very service that it was providing to Defendant. This is another indication that the misrepresentation alleged is simply based on ability to pay.[1] Plaintiff is unable to show by virtue of its very complaint that it can satisfy the intent, reckless disregard, or reliance standards.

Third, Plaintiff's contention that the entire indebtedness, including the amount incurred prior to the alleged misrepresentation, is not well-founded. 11 U.S.C. § 523(a)(2) specifically limits itself to money, services, and other items "to extent obtained by" fraud. Although the Amended Complaint asserts that it is for attorney's fees, traditionally characterized as services, Plaintiff now attempts to re-characterize its loss as some sort of credit transaction. (Response at 19). The cases cited by Plaintiff do not indicate that it is entitled to be paid its full claim. In Hungbank v. Kim, 62 F.3d 1511 (9th Cir. 1995), cited by Plaintiff, the Court simply reaffirmed the Bankruptcy Appellate Panel's decision that there was no *per se* "new money" requirement for an extension of credit. However, this was not the measure of damages. The Bankruptcy Appellate Panel held that the creditor must prove,

> [O]n top of the first six factors set forth above, that it incurred damage proximately resulting from the misrepresentation. Specifically, if the creditor demonstrates that it had valuable collection remedies at the time of the extension

---

[1] Contrary to the assertions otherwise in the Response Brief at 18, Defendant does dispute that he promised to pay Plaintiff from the refund proceeds. Defendant acknowledged only that the amount of the refund would be sufficient to pay Plaintiff's bills if an amount could be agreed upon. There was no actual payment arrangement.

> or renewal, that it did not exercise in reliance on the debtor's misrepresentation and that those remedies lost value during the renewal or extension period, the creditor has shown proximate damage to the extent that those remedies lost value.

In re Kim, 163 B.R. 157, 161 (9th Cir. BAP 1994). Thus, on remand, the creditor was authorized damages only to the extent that its collection remedies lost value. Here the Amended Complaint fails to allege any cognizable damages other than the future attorney's fees incurred.

However, this finding as to damages seems to conflict with the Sixth Circuit panel's split decision in Wolf v. Campbell, 159 F.3d 963 (6th Cir. 1998), also cited by Plaintiff. In Wolf, two judges on the panel concluded that there was an oral contract to forebear between the parties enforceable under the Michigan law of promissory estoppel. Utilizing the policy perspective of perverse incentives cited by Plaintiff, the Court found that creditors are not required to prove any additional injury beyond the original loan in a refinance transaction. 159 F.3d at 967. The panel decision notes that the Ninth Circuit disagreed with this approach, citing In re Siriani, 967 F.2d 302, 305 (9th Cir. 1992), a case actually discussed in the Kim decision, supra. Thus, there is an acknowledged split of authority. The dissent in Wolf, supra, cites the caselaw supporting the majority opinion (virtually identical to the cases cited in Plaintiff's Response) and distinguishes them all. "A careful examination of those cases indicate that they do not involve mere forbearance but a renewal of credit." Wolf, supra, 159 F.3d at 969. Thus, the dissent's holding is, "Because I would hold that mere forbearance is not an extension of credit and can find neither restructuring of the debt nor renewal of the debt or refinancing of credit, I believe the original debt, which was not obtained by fraud, may be discharged." Id. Here, the Plaintiff alleges only that "it forestalled any effort to collect the past due amount." (Response at 20). That is insufficient as a matter of law.

Finally, to force the bankrupt Defendant to conduct discovery on this case in the hopes of Plaintiff discovering a claim would be inequitable and an unnecessary burden on this Defendant. As indicated by the Amended Complaint, Plaintiff can do nothing more than gather background information via discovery. The basic complaint remains the same. The alleged false representation is about the payment of a future tax refund for payment of past attorney's fees and nothing else. The complaint simply fails to state a claim.

WHEREFORE, Defendant respectfully demands that the complaint be dismissed.

Respectfully submitted this 24th day of June, 2013.

/s/ Daniel L. Wilder
DANIEL L. WILDER
State Bar No. 141448
Attorney for Defendant

EMMETT L. GOODMAN, JR. LLC
544 Mulberry Street, Suite 800
Macon, Georgia 31201
Telephone: (478) 745-5415

CERTIFICATE OF SERVICE

I, Daniel L. Wilder, do certify that I have served the Plaintiffs' attorney with a true and correct copy of the within and foregoing Reply to Response to Motion to Dismiss by depositing a copy of the same to each in the United States Mail in a properly addressed envelope with adequate postage thereon to:

Mr. Bruce B. Weddell
Burbage & Weddell, LLC
100 Colony Square, Suite 1825
1175 Peachtree St. NE
Atlanta, GA 30361

This 24th day of June, 2013.

/s/ Daniel L. Wilder
DANIEL L. WILDER
State Bar No. 141448
Attorney for Defendant

EMMETT L. GOODMAN, JR. LLC
544 Mulberry Street, Suite 800
Macon, Georgia 31201
Telephone: (478) 745-5415