**SIGNED this 19 day of September, 2013.**



_____
**James P. Smith
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | Case No. 13-30083-JPS |
| R. SCOTT APPLING, | : | |
| CONNIE F. APPLING, | : | |
|       Debtors | : | |
| | : | |
| LAMAR, ARCHER & COFRIN, LLP, | : | |
|       Plaintiff | : | |
| | : | Adversary Proceeding |
| v. | : | No. 13-3042 |
| | : | |
| R. SCOTT APPLING, | : | |
|       Defendant | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Plaintiff:    Bruce B. Weddell
Burbage & Weddell, L.L.C.
100 Colony Square, Suite 1825
Atlanta, Georgia 30361

    Robert C. Lamar
Lamar Archer & Cofrin
50 Hurt Plaza, Suite 900
Atlanta, Georgia 30303

    For Defendant:    Daniel L. Wilder
Emmett L. Goodman, Jr. LLC
544 Mulberry Street, Suite 800
Macon, Georgia 31201

## **MEMORANDUM OPINION**

Before the Court is Defendant's motion to dismiss Plaintiff's complaint on the ground that the complaint fails to state a claim upon which relief can be granted pursuant to Bankruptcy Rule 7012 and Fed. R. Civ. P. 12(b)(6).  Plaintiff, in its complaint, objects to the dischargeability of its claim against Defendant pursuant to 11 U.S.C. § 523(a)(2)(A).  The Court, having considered the motion, the response and the complaint, now publishes this memorandum opinion.

When challenged under Rule 12(b)(6):

> "To survive...a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability.  Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.

Miyahira v. Vitacost.com, Inc., 715 F.3d 1257, 1265 (11th Cir. 2013).  Accordingly, accepting as true the allegations in Plaintiff's amended complaint[1], Plaintiff's claim is based on the following facts.

Plaintiff is a law firm that represented Defendant and his company, Hartwell Enterprises, Inc. ("Hartwell"), in litigation in the Superior Court of Franklin County, Georgia.  In March 2005, Plaintiff's unpaid legal fees for representing Defendant and Hartwell had grown to $66,710.57.  Robert Lamar ("Lamar"), a partner of Plaintiff, had a meeting with Defendant and advised that Plaintiff would have to withdraw from the

---

[1] A hearing was held on July 2, 2013, on Defendant's objection to Plaintiff's motion to amend its complaint.  For the reasons stated at the hearing, the Court has entered an order granting Plaintiff's motion to amend.

representation unless the legal fees were brought current.  Defendant advised Lamar that his accountant had just prepared his 2004 tax return and that he would be receiving a tax refund in excess of $100,000.  Defendant represented to Lamar that the tax refund would be sufficient to pay all outstanding fees and agreed to pay those fees, as well as subsequent fees, as soon as the tax refund was received if Plaintiff would continue to represent him and Hartwell and forego immediate collection of the past due amounts.  In reliance upon this promise, Plaintiff continued to represent Defendant and Hartwell and did not institute collection efforts.

In November 2005, Defendant again confirmed his promise to use his tax refund to pay all of Plaintiff's fees.  Plaintiff continued to represent Defendant and his company and successfully settled the superior court litigation in March 2006.  By this time, the unpaid fees had grown to $104,179.60.  When Defendant did not pay these fees, Plaintiff obtained judgment against Defendant for this amount in the Superior Court of Hart County, Georgia.

Plaintiff alleges that when Defendant promised to use his tax refund to pay the fees, Defendant had no intent to do so or, in the alternative, had no reasonable basis to believe the refund would be sufficient to pay the fees.  Plaintiff alleges that, through his knowledge of the distressed financial state of Hartwell, Defendant knew the refund would not be available for payment of the fees.  Further, Plaintiff alleges that when it met with Defendant in November 2005, and Defendant renewed his promise regarding the tax refund, Defendant had already received the refund and spent the refund on the operations of Hartwell.  Accordingly, Plaintiff alleges that its claim against Defendant arose as a result of Defendant's "false pretenses, a false representation, or actual fraud" and is therefore not

dischargeable under 11 U.S.C. §523(a)(2)(A).

## DISCUSSION

11 U.S.C. § 523(a)(2) provides, in pertinent part:

> (a) A discharge under section 727...of this title does not discharge an individual debtor from any debt -
> ...
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> (B) use of a statement in writing-
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive...

<u>Statement Respecting Defendant's Financial Condition</u>

Defendant contends that his alleged oral representation regarding his intent to use his tax refund to pay the fees is not actionable under section 523(a)(2)(A) because the alleged representation is "a statement respecting the debtor's...financial condition" which, pursuant to section 523(a)(2)(B), must be in writing. As explained by the Bankruptcy Appellant Panel for the Sixth Circuit:

> Subsections (A) and (B) are mutually exclusive. All statements regarding a debtor's financial condition, whether written or oral, are expressly excluded from subsection (A). Rather, such a creditor must proceed under subsection (B) and satisfy the requirement that the statement of financial condition be in writing. A debt based upon an oral misrepresentation of financial condition

5

> is not actionable and will be dischargeable. Conversely, a debt obtained through fraudulent written statements about a debtor's financial condition will be nondischargeable. As a result of this construction, whether a debt under this section is dischargeable or nondischargeable depends on whether the fraudulent misrepresentation (i) is oral or in writing and (ii) whether the statement concerns the debtor's financial condition...
>
> Two views have emerged on the proper interpretation of the phrase "respecting the debtor's...financial condition." The "broad interpretation" includes any communication that has a bearing on the debtor's financial position. In other words, any communication addressing the status of a single asset or liability qualifies. The "strict interpretation," on the other hand, limits statements "respecting the debtor's...financial condition" to communications that purport to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities.

Prim Capital Corp. v. May (In re May), 368 B.R. 85, 2007 WL 2052185, at *5-6 (B.A.P. 6th Cir. July 19, 2007) (unpublished decision) (internal citations omitted).

The Eleventh Circuit has not addressed this issue. The Fifth Circuit[2] and the Tenth Circuit[3] have adopted the "strict interpretation". The Fifth Circuit noted that the Fourth Circuit, in Engler v. Van Steinburg (In re Van Steinburg), 744 F.2d 1060 (4th Cir. 1984), apparently followed the "broad interpretation".[4]

The Fifth Circuit noted that the Eighth Circuit's[5] construction of section 523(a)(2)(A) was consistent with the construction applied by the Fifth and Tenth Circuits.[6]

---

[2] Bandi v. Becnel (In re Bandi), 683 F.3d 671 (5th Cir. 2012), cert denied 133 S.Ct. 845, 184 L.Ed.2d 654 (2013).

[3] Cadwell v. Joelson (In re Joelson), 427 F.3d 700 (10th Cir. 2005), cert denied 547 U.S. 1163, 126 S.Ct. 2321, 164 L.Ed.2d 840 (2006).

[4] 683 F.3d at 677.

[5] Rose v. Lauer (In re Lauer), 371 F.3d 406 (8th Cir. 2004).

[6] 683 F.3d at 677.

Id. Bankruptcy courts have reached conflicting conclusions.[7] For the reasons set forth by the Fifth Circuit in Bandi v. Becnel, supra, this Court adopts the "strict interpretation" as to the meaning of "a statement respecting the debtor's...financial condition".

This case is similar to the case of Barnes v. Belice (In re Belice), 461 B.R. 564 (B.A.P. 9th Cir. 2011). There, in connection with obtaining a loan, the debtor made a number of representations regarding specific assets and the probable sale of a business to provide a source of funds for repayment of the loan. The court, adopting the "strict interpretation", held that the representations:

> [R]elate to a handful of [debtor's] assets, but they do not reveal anything meaningful or comprehensive about his overall net worth. These statements do not purport to reflect all of [debtor's] assets, and they tell us nothing regarding his liabilities or any liens against any of his property....Accordingly, under our interpretation of the financial condition phrase, [debtor's] alleged misrepresentations do not amount to a statement respecting his financial condition. At most, they are isolated representations regarding various items that might ultimately be included as assets in a balance sheet or in a statement of net worth.

Id. at 579. Similarly, in the case of In re May, supra, the court held that a promise by a debtor attorney that he would be able to repay a loan with fees he expected to receive from the settlement of a case was "not related to [his] overall financial health but...related to a single debt and the potential of one source of income" and therefore was actionable under § 523(a)(2)(A). Id. at *7.

---

[7] See Schneiderman v. Bogdanovich (In re Bogdanovich), 292 F.3d 104, 112-13 (2nd Cir. 2002) (collecting cases).

In the case at bar, the alleged misrepresentation is that a single asset, the tax refund, would be used to pay Plaintiff's legal fees. This is not a representation as to Defendant's overall financial condition or net worth.

In support of his position, Defendant relies on the case of Baker v. Sharpe (In re Sharpe), 351 B.R. 409 (Bankr. N.D. Tex. 2006). In that case, the debtor made an oral representation that he had hidden funds from his wife during their divorce and that the funds would be available to repay a loan as soon as the divorce was final. The court held that this representation concerned the debtor's financial condition and therefore was not actionable under § 523(a)(2)(A). However, in light of the subsequent decision by the Fifth Circuit Court of Appeals in Bandi, it appears that the Sharpe case has been abrogated.

In addition, Defendant relies on the case of Bancorpsouth Bank v. Callaway (In re Callaway), 2006 WL 6589022 (Bankr. N.D. Ga. Nov. 28, 2006). There, the debtor made oral representations to the creditor that he would receive substantial distributions from a trust each year and that this would provide him with funds to repay a loan. The court agreed that the "strict interpretation" was the proper approach in considering section 523(a)(2). Nevertheless, citing Sharpe and Joelson for support, it found that these statements were statements concerning the debtor's financial condition. Id. at *21.

Of course, as previously stated, it appears that Sharpe has been abrogated by the Fifth Circuit's Bandi decision. Further, the Callaway court's analysis of the Tenth Circuit's decision in Joelson, supra, appears flawed. The court analyzed Joelson by stating:

> The Joelson case involved a debtor who persuaded the plaintiff to loan her $50,000 by misrepresenting that her brother would give her money to repay the debt and that she would provide assets, including real estate and antique

cars, to be used as collateral for the loan. The Bankruptcy Appellant Panel affirmed the bankruptcy court's holding that the statement regarding the fact that her brother would give her money to repay the loan was an oral statement respecting the debtor's financial condition, but that the statements regarding the particular assets to be used as collateral were not broad enough to be considered statements regarding her overall financial health. It appears that the only issue before the Tenth Circuit was the bankruptcy appellant panel's decision that the debtor's misrepresentation as to the ownership of the assets did not constitute a statement respecting the debtor's financial condition. The Tenth Circuit affirmed that decision, but did not have the opportunity to address the panel's decision that the statement regarding the debtor's ability to obtain money from her brother to repay the debt was an oral statement respecting her financial condition. At [sic] to that issue, the panel had concluded that this statement was a statement respecting financial condition because it involved her ability to generate income and "[e]ven the narrow interpretation includes statements of 'ability to generate income'" In re Joelson, 307 B.R. 689, 696 (10th Cir. BAP 2004).

Id. However, this analysis appears to be incorrect because the Tenth Circuit, in Joelson, stated, "Second, Joelson made representations as to her intention and specific ability to obtain financing from her brother to repay Cadwell's loan (the "Repayment Representations")." 427 F.3d at 714. The circuit court then held:

> Similarly, the Repayment Representations are not a statement as to Joelson's overall financial health. Joelson's representation to Cadwell that Cadwell would be able to look to Joelson's brother for repayment is analogous to Joelson's representations to Cadwell that she owned one particular asset. Just as a statement about one of Joelson's assets is not a statement that reflects Joelson's overall financial health, and therefore does not 'respect [ ] the debtor's...financial condition,' a statement about one part of Joelson's income flow–the flow of funds from her brother–does not reflect Joelson's overall financial health. Therefore, the Repayment Representations also are not 'respecting the debtor's...financial condition'.

Id. at 715. Thus, because the Tenth Circuit reversed the holding of the Bankruptcy Appellant Panel in Joelson, the reliance by the court in Callaway upon the Bankruptcy Appellant Panel decision was in error.

9

In the case at bar, the Court finds that the alleged oral misrepresentation regarding the use of the tax refund to pay the fees was not a representation "respecting the debtor's...financial condition". Accordingly, Plaintiff has stated a claim under section 523(a)(2)(A).

Promise of Future Act

Defendant also argues that to state a claim under section 523(a)(2)(A), the misrepresentation must be about current or past facts. Defendant argues that the alleged promise to pay fees with the tax refund was a promise to do a future act, which is not actionable under section 523(a)(2)(A).

As held by the Fifth Circuit in <u>Allison v. Roberts (In re Allison)</u>, 960 F.2d 481 (5th Cir. 1992), under section 523(a)(2)(A), a misrepresentation must:

> [B]e of past or current acts; a promise to perform acts in the future is not considered a qualifying misrepresentation merely because a promise subsequently is breached. A debtor's misrepresentation of his intentions, however, may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised.

960 F.2d at 484 (citations omitted). In this case, Plaintiff's amended complaint alleges that when the promise was first made, Defendant knew that the refund would not be available to pay the fees because it would be needed to keep his company, Hartwell, in business. Plaintiffs further allege that when the promise was renewed in November 2005, Defendant had no intent to perform because he had already received and spent the refund. Although it remains to be seen whether Plaintiff can prove these allegations, by alleging that Defendant never intended to perform as promised, Plaintiff's complaint states a claim for relief.

Justifiable Reliance

Defendant also argues that Plaintiff's complaint fails to state a claim because Plaintiff does not plead any facts to establish justifiable reliance on Defendant's promise. Although section 523(a)(2)(A), by its terms, does not contain a reliance requirement,[8] the Supreme Court, in Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), concluded that Congress intended to adopt the common-law meaning of the terms "false pretenses, a false representation, or actual fraud" for purposes of section 523(a)(2)(A). 516 U.S. at 69, 116 S.Ct. at 443. Therefore, the Court ruled that, consistent with common-law requirements, a claim under section 523(a)(2)(A) requires "justifiable reliance". 516 U.S. at 70-76, 116 S.Ct. at 443-46.

The Court made clear that "justifiable reliance" allows the creditor to rely on the representation of the debtor unless there are facts known to the creditor that would have alerted him to the falsity of the debtor's representation. Thus, a creditor is entitled to rely on the debtor's representation that his property is free of liens without first conducting a title search of the public real estate records. 516 U.S. at 70, 116 S.Ct. at 444. On the other hand, a creditor is:

> [R]equired to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, [this] rule...applies only when the recipient of the misrepresentation is capable of appreciating its falsity at

---

[8] Contrast section 523(a)(2)(B) that specifically requires reasonable reliance on a false statement in writing regarding the debtor's financial condition.

11

> the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses.

516 U.S. at 71, 116 S.Ct. at 444 (quoting Restatement of Torts, § 541, Comment a).

Defendant contends that:

> At the time of the alleged misrepresentation, there were too many unknowns for anyone, much less the sophisticated Plaintiff law firm here, to rely on...In this case, Plaintiff did not know that the taxing authority would approve the return, the actual amount of the return, or the timing of the payment of the refund. Plaintiff apparently did not even take the opportunity to review the tax return itself. No document was drawn up to reflect any assignment of the funds from the tax return. There is not even a letter from Plaintiff to Defendant confirming the alleged conversations about the tax return.

Defendant's Motion To Dismiss, Docket No. 7, p. 6. However, Defendant misses the point of Plaintiff's complaint. Plaintiff does not allege that Defendant made a misrepresentation regarding the validity or amount of the refund. Indeed, in his answer, Defendant, "admits that he was entitled to a tax refund for the year 2004 which he reasonably believed in March 2005 would be approximately $100,000." Answer to Amended Complaint, Docket No. 15, paragraph 9. Rather, the alleged misrepresentation is Defendant's promise that he would use the refund upon its receipt to pay the fees when he had no intent to perform the promise when it was made.

Given the relatively low bar the creditor must clear to show justifiable reliance, it appears sufficient, at least for purposes of a motion under Rule 12(b)(6), for Plaintiff to have stated that it did justifiably rely on Defendant's promise. Accordingly, Plaintiff has stated a claim.

Amount of Damages

Finally, Defendant argues that Plaintiff is only entitled to those damages which arose after the alleged misrepresentation in March 2005. However, as explained by the court in Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126 (4th Cir. 1999):

> Through explicit language, Congress provided not only that debts incurred through the direct provision of money, property, or services, but also that the extension, renewal, or refinancing of credit, would fall under the purview of Bankruptcy Code § 523(a)(2)(A)...
>
> Section 523(a)(2)(A) covers debts incurred through the direct provision of 'money, property, [or] services.' As noted above, the primary debtor-creditor relationship is covered by § 523(a)(2)(A) through express language extending its scope to debts incurred through the direct acquisition of value. See 11 U.S.C. § 523(a)(2)(A) (including 'any debt...for money, property, services'). Section 523(a)(2)(A), however, also reaches secondary debt transactions-extensions, renewals, and refinancing...
>
> Our definition focuses on an 'extension' of credit as an autonomous transaction that results in the lengthening of a debtor-creditor relationship. Black's Law Dictionary defines extension as '[a]n allowance of additional time for the payment of debts.' Black's Law Dictionary 583 (6th ed. 1990). In other words, despite the fact that a debt may already be due, the creditor grants a reprieve to the debtor....A extension of credit is analogous to the classic forbearance granted by a creditor in relation to a matured debt. Extensions of credit under 523(a)(2) are thus properly viewed as merely an agreed enlargement of time allowed for payment.

180 F.3d at 131-32.

See Ojeda v. Goldberg, 599 F.3d 712 (7th Cir. 2010) (although original loan not obtained by fraud, extension procured by fraud made entire debt nondischargeable); Wolf v. Campbell (In re Campbell), 159 F.3d 963 (6th Cir. 1998) (fraudulently obtained extension of a nonfraudulent, dischargeable old debt renders debt nondischargeable even though debt was not collectable at time of extension because debtor was insolvent); Cho

13

Hung Bank v. Kim (In re Kim), 62 F.3d 1511 (9th Cir. 1995) (although original loan was obtained without fraud, extension obtained through false statement made debt nondischargeable even though no new money was advanced at time of extension); Household Finance Corp. v. Greenidge (In re Greenidge), 75 B.R. 245, 247 (Bankr. M.D. Ga. 1987) (Laney, J.) (false representation in connection with renewal or refinancing of credit renders entire debt nondischargeable).

In this case, at the time the alleged misrepresentation was made in March 2005, the outstanding legal fees owed by Defendant to Plaintiff were about $66,710. Those fees were due and payable at that time. By agreeing to continue to represent Defendant and his company and not to withdraw or attempt collection of the fees, Plaintiff gave Defendant an extension with respect to the fees then due. Accordingly, in addition to asserting a claim for the fees incurred after the alleged misrepresentation, Plaintiff may also assert a claim for the fees which had already been incurred due to the extension of time granted Defendant to pay those fees.

## CONCLUSION

For the reasons stated herein, Defendant's motion is denied. A separate order in accordance with this memorandum opinion will be entered.